O

# United States District Court
# Central District of California

| | |
|---|---|
| PHILIP MARKOWITZ,<br><br>        Plaintiff,<br><br>   v.<br><br>JPMORGAN CHASE BANK, N.A. et al.,<br><br>        Defendants. | Case № 2:23-cv-06528-ODW (MRWx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [32]** |

## I.   INTRODUCTION

Plaintiff Philip Markowitz brings this action against Defendant JPMorgan Chase Bank, N.A. ("Chase") for alleged improper retention of funds in Markowitz's bank accounts. (Notice of Removal ("NOR") Ex. 1 ("Compl."), ECF Nos. 1, 1-1.) Chase now moves for summary judgment. (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 32.) For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** Chase's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The Court takes the following undisputed facts from Chase's Statement of Uncontroverted Facts ("SUF"), (ECF No. 32-1), and Markowitz's Statement of Genuine Disputes of Material Fact ("SGDF"), (ECF No. 34-1).

On May 2, 2017, Markowitz signed a "Personal Signature Card" for a Chase Better Banking Checking account ending in 7449 (the "Account"), agreeing to be bound by the Deposit Account Agreement, effective March 2017 ("2017 DAA") and "as amended from time to time." (SUF ¶¶ 1, 3–4.) The Deposit Account Agreement, effective March 2023 ("2023 DAA"), governed the Account as of March 19, 2023. (*Id.* ¶ 6.) The 2017 DAA and 2023 DAA (the "DAAs") provide that Chase or Markowitz may close the Account "at any time for any reason or no reason without prior notice." (*Id.* ¶ 12.) The DAAs further provide that upon closing the Account, Chase will "return the balance less any fees, setoffs, or other amounts if the balance is greater than $1." (*Id.* ¶ 13.) Moreover, Chase "may decline or prevent any or all transactions" to and from the Account, "including refusing, freezing, reversing or delaying any specific withdrawal, payment or transfer of funds" to or from the Account, "or removing funds from" the Account "to hold them pending investigation in one or more of" listed circumstances.[2] (*Id.* ¶¶ 14, 25.) Identified circumstance include Chase "suspect[ing] that any transaction may involve illegal activity or may be fraudulent" and "reasonably believe[ing] that" restricting withdrawals "is necessary to avoid a loss or reduce risk to" Chase. (*Id.* ¶ 14.)

On May 3, 2023, Markowitz deposited two checks (the "Checks") totaling $683,246.97 (the "Funds") into his Account. (*Id.* ¶ 18.) The proceeds of one of the

---

[2] Markowitz contends that Chase may only place restrictions on the Account if there are "pending transactions, the [A]ccount is overdrawn, or [the A]ccount is subject to legal process (such as garnishment, attachment, execution, levy or similar order)." (SGDF ¶¶ 25, 28.) This is not what the DAAs state. For instance, the 2017 DAA states only that Chase is "*not required* to close" the Account at Markowitz's request under the above described circumstances. (Decl. Jane Kespradit ISO Mot. ("Kespradit Decl.") Ex. 2 ("Chase RFAs") Ex. B ("2017 DAA") at 13, ECF No. 32-2 (emphasis added); *see* Def.'s Resp. SGDF 25, 28, ECF No. 40.)

2

Checks became available in the Account on May 4, 2023, while the other became available on May 12, 2023.  (*Id.* ¶¶ 19–20.)  On May 11, 2023, Chase closed the Account (and Markowitz's other Chase accounts) based on an "abusive customer" case submission.[3]  (*Id.* ¶ 21.)  That same day, Chase restricted the Account.  (*Id.* ¶ 22.)  As part of its closure process, Chase restricts and reviews the exited customer's account to verify that the funds can be released.  (*Id.* ¶ 28.)  If such funds cannot be verified, Chase may hold the amount in suspense pending verification.  (*Id.*)

In a letter dated May 11, 2023, Chase notified Markowitz that it "believe[s] that it's in our mutual interest to close account(s) due to inappropriate conduct with our employees."  (*Id.* ¶ 23.)  Around two days later, Markowitz alleges that while he was in a Chase branch, a Chase employee informed him that he could not make a withdrawal as the Account had been closed due to his inappropriate conduct with a Chase employee.  (*Id.* ¶ 27.)

On May 18, 2023, in connection with the closure process, a Chase fraud department employee reviewed the Account and restricted the Funds.  (*Id.* ¶ 29.)  Chase purports that it restricted the Funds because it was concerned that the payee name on the Checks, SureTec Insurance Company ("SureTec"), may have been altered, and Chase suspended transfer of the Funds pending SureTec's verification of issuance.  (*Id.* ¶¶ 30, 32–33.)  Markowitz contends that this was a "feigned reason" for Chase's restriction of the Funds.  (SGDF ¶¶ 30, 32.)

Chase verified the remaining Account balance (excluding the Funds) in the Account and released those funds, totaling $8,791.01, to Markowitz in a May 22, 2023 check.[4]  (SUF ¶ 35.)  Markowitz regularly called Chase during May and June

---

[3] While irrelevant to the outcome of this Motion, the Court notes that Markowitz denies being abusive to any Chase employee.  (SGDF ¶ 21.)

[4] Markowitz contends that Chase "presented no evidence that it verified" the $8,791.01.  (SGDF ¶ 35.)  Chase has provided such evidence: a contemporaneous business record that includes an entry dated May 18, 2023, stating, "Remainder of funds have been verified and approved to be released." (Def.'s Resp. SGDF ¶9; Decl. Kevin Kesterson ISO Mot. ("Kesterson Decl."), Ex. A at 2, ECF No. 32-4.)

2023 to inquire about the Funds. (Decl. Philip Markowitz ISO Opp'n ("Markowitz Decl.") ¶¶ 17–18, 22, ECF No. 34-2.)

On May 23, 2023, Chase attempted to contact SureTec through its parent company, but was informed it was outside of business hours. (SUF ¶ 36.) Between July 24, 2023, and November 7, 2023, after Markowitz initiated this action, Chase requested that Markowitz provide it with information that might assist in its investigation of the Checks, including a contact at SureTec. (*Id.* ¶¶ 38–39.) Markowitz did not provide Chase with the requested information. (*Id.* ¶ 40.) On December 4, 2023, Chase sent a letter to two firms that had appeared as counsel of record for SureTec in unrelated court filings to confirm whether SureTec believed the Checks were authentic. (*Id.* ¶¶ 41–42.) On December 8, 2023, SureTec confirmed that the Checks were genuine and unaltered. (*Id.* ¶ 43.) On or about February 27, 2024, Markowitz received a check from Chase in the amount of the Funds. (*Id.* ¶ 44.)

On July 6, 2023, Markowitz filed this action against Defendants Chase and Claire Dawson, a Chase employee who Markowitz alleged was "the decision maker" with regard to his Account, in Los Angeles County Superior Court. (Compl ¶¶ 2–3, 25.) Markowitz asserts four claims: (1) conversion, (2) claim and delivery, (3) intentional infliction of emotional distress ("IIED"), and (4) negligent infliction of emotional distress ("NIED"). (*Id.* ¶¶ 26–55.) Markowitz seeks consequential and incidental damages, punitive and exemplary damages, attorneys' fees, and costs. (*Id.*, Prayer for Relief). Markowitz also sought the amount of the Funds, (*id.*), but Chase has since returned those Funds, (SUF ¶ 44).

Chase removed the action to federal court based on diversity jurisdiction. (*See* NOR.) The Court granted Dawson's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction. (Order Mot. Dismiss, ECF No. 24; Min. Order, ECF No. 25.)

1  Chase now moves for summary judgment on Markowitz's claims against it.
2  (Mot.) The Motion is fully briefed. (Opp'n Mot. ("Opp'n"), ECF No. 34; Reply ISO
3  Mot. ("Reply"), ECF No. 39.)[5]

### III.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324. The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to its case when it will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v.*

---

[5] The Court struck Markowitz's motion for partial summary judgment on his conversion claim for failure to file the motion at least thirty-five days before the hearing, as required by this Court's standing order. (Min. Order, ECF No. 37.) Chase separately moves to exclude an expert report and testimony of Markowitz's expert. (Motion Exclude, ECF No. 33.) That motion is not the subject of this Order.

*Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced. *Id.*

## IV.     EVIDENTIARY OBJECTIONS

Chase objects to several of Markowitz's responses to Chase's set of facts. (*See* Def.'s Objections SGDF ("Def.'s Obj."), ECF No. 41.)

Chase objects primarily on the grounds of relevance or improper legal argument. (*Id.* at 2–6.) The Court does not consider improper argument and legal conclusions offered in Markowitz's Statement of Genuine Disputes of Material Fact, (*see* Scheduling & Case Management Order 7–9, ECF No. 21), so Chase's objections on that basis are moot. Moreover, evidentiary objections on the grounds that such evidence is "irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). Accordingly, the Court overrules Chase's objections on the grounds of relevance and improper legal argument.

Additionally, to the extent the Court relies on objected-to evidence in this order without further discussion, those objections are overruled. *See id.* at 1122 (proceeding with only necessary rulings on evidentiary objections).

## V. DISCUSSION

Chase moves for summary judgment on all four counts. (Mot.) The Court takes each in turn.

**A. Conversion**

Chase seeks summary judgment on Markowitz's conversion claim. (Mot. 16–21.) "Conversion is the wrongful exercise of dominion over the property of another." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). To succeed on a claim for conversion, a plaintiff must prove "(1) the plaintiff's ownership or right to possession of the property, (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.* Markowitz alleges that Chase "intentionally, knowingly and maliciously interfered" with his property by refusing to return the Funds. (Compl. ¶ 28.) Markowitz contends that Chase's conversion has caused him severe emotional distress, and he also seeks consequential and punitive damages. (*Id.* ¶¶ 31–34.) Chase challenges Markowitz's conversion claim on multiple grounds: (1) the economic loss rule bars this claim, (2) Markowitz cannot establish Chase's conduct was wrongful, and (3) the DAAs preclude Markowitz from recovering the damages he seeks. (Mot. 16–21.)

*1. The Economic Loss Rule*

Chase first argues that the economic loss rule bars Markowitz's conversion claim. (*See id.* at 16–18; Reply 6–8.)

"The economic loss rule is a device . . . that courts have developed to address and protect the often elusive boundary line between tort and contract law." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 19 (2024). "Given the tension created by the policy of assuring predictability in contractual relations and the expansive scope of potential tort recovery," courts developed the economic rule "to ensure that the law of contract

would not drown in a sea of tort." *Id.* at 20 (internal quotation marks omitted). While "tort recovery for breach of a contract duty is generally barred," "the economic loss rule does not act as an *absolute* bar to tort recovery in every case in which the parties have a contractual relationship." *Id.* at 20, 23. Accordingly, "[c]ourts generally permit tort suits if the defendant allegedly violated a duty rooted in tort principles that is independent of the parties' contractual rights and obligations and exposed the plaintiff to a risk of harm beyond the parties' reasonable contemplation when they entered into the contract." *Id.* at 23.

The California Supreme Court recently announced facts courts must consider when evaluating whether the economic loss rule bars a claim:

> First, applying standard contract principles, it must ascertain the full scope of the parties' contractual agreement, including the rights created or reserved, the obligations assumed or declined, and the provided remedies for breach. Second, it must determine whether there is an independent tort duty to refrain from the alleged conduct. Third, if an independent duty exists, the court must consider whether the plaintiff can establish all elements of the tort independently of the rights and duties assumed by the parties under the contract.

*Id.* at 26.

Chase argues that Markowitz's conversion claim "arises out of the parties' contractual relationship and conduct that is covered by the DAA[s], *i.e.*, whether and under what circumstances Chase had the right to close the Account and restrict Funds." (Mot. 17.) However, the Court must also consider whether an independent tort duty exists, and that the DAAs contemplate these circumstances does not mean that Chase has no independent duty to refrain from converting the Funds.

Courts in this district have held that whether a defendant owes a plaintiff an independent duty to not convert the plaintiff's property turns on "whether the ownership interest that formed the basis for the conversion claim preexisted the contract or arises from the contract." *Fine v. Kan. City Life Ins. Co.*, 627 F. Supp. 3d 1153, 1161 (C.D. Cal. 2022) (quoting *Expedited Packages, LLC v. Beavex Inc.*,

No. 2:15-cv-00721-MMM (AGRx), 2015 WL 13357436, at *4 (C.D. Cal. Sept. 10, 2015)). Where the plaintiff has an ownership interest in the property "independent" of the contract, courts have found that the economic interest rule does not bar a conversion claim. *Akhtar v. Compound Labs, Inc.*, No. 2:19-cv-07440-CBM (ASx), 2023 WL 8870134, at *4 (C.D. Cal. Nov. 6, 2023); *see, e.g.*, *Flint CPS Inks N. Am. LLC v. Trend Offset Printing Servs., Inc.*, No. 8:20-cv-00651-JLS (JDEx), 2020 WL 7862127, at *4 (C.D. Cal. Dec. 14, 2020) (holding conversion claim lies where plaintiff's property interest in the converted goods was not a product of the contract, but preexisted the contract). Conversely, where the property rights "flow[] from [the] contract," courts have found the economic interest rule bars a conversion claim. *Motivo Eng'g, LLC v. Black Gold Farms*, No. 2:22-cv-01447-CAS (JCx), 2022 WL 3013227, at *4 (C.D. Cal. June 27, 2022); *see, e.g.*, *First Am. Cinema, LLC v. Chicken Soup for the Soul Ent., Inc.*, No. 2:19-cv-09577-PSG (GJSx), 2020 WL 11025582, at *5 (C.D. Cal. Mar. 12, 2020) (holding economic loss rule barred conversion claim where plaintiff had no "preexisting independent ownership interest" in any of the alleged ad revenue profits from the license agreements).

Chase's authorities confirm this result. For example, in *Perez v. JPMorgan Chase Bank, N.A.*, Judge Gutierrez initially dismissed the plaintiff's conversion claim for the defendant's failure to return the contents of the plaintiff's safety deposit box. No. 2:20-cv-01692-PSG (MRWx), 2020 WL 2515950, at *4–5 (C.D. Cal. May 8, 2020). Chase omits that in a subsequent order, "[u]pon further reflection," Judge Gutierrez held that the economic loss rule did not bar the plaintiff's claim. *Perez v. JPMorgan Chase Bank*, No. 2:20-cv-01692-PSG (MRWx), 2020 WL 9259703, at *5 (C.D. Cal. Sept. 8, 2020). There, Judge Gutierrez explained that "while the duty not to steal Plaintiffs' money was undoubtedly implicit in the contract, Defendant also had an independent duty under tort law, which existed before, during, and after any contractual duties arose or ceased, not to convert Plaintiff's property." *Id.*

The same is true in this case. The DAAs provide that Chase can refuse to transfer the contents of Markowitz's Account under certain circumstances. This does not alter the fact that Chase had an independent duty to not convert Markowitz's property. Markowitz's ownership interest in the Funds—given to him by SureTec—"existed independent of his" contract with Chase. *Akhtar*, 2023 WL 8870134, at *4. Thus, Markowitz would have had a right to the Funds with or without the DAAs, and Chase would owe him a duty to not convert his property with or without the DAAs.

For the same reasons, Markowitz can establish all elements of conversion independently of the rights and duties assumed by the parties under the contract: (1) his right to possession of the Funds, (2) Chase's conversion by a wrongful act or disposition of property rights; and (3) damages. *See Lee*, 61 Cal. 4th at 1240 (describing elements of conversion).

As explained, Markowitz's right to the Funds existed independent of the DAAs. With respect to the second element—Chase's wrongful act—the DAAs permitted Chase to delay return of the Funds "pending investigation" if it suspected a fraudulent transaction and to reduce risk to itself. (SUF ¶ 14.) However, Markowitz alleges that Chase's stated reasons for delaying return of the Funds are "feigned" and that Chase delayed return of the Funds after it completed its investigation. (*See* Decl. Craig R. Smith ISO Opp'n ("Smith Decl.") ¶ 13, ECF No. 34-9; SGDF ¶¶ 29–30.) Lastly, as for damages, while the DAAs may have contemplated damages Markowitz incurred from the delay of return of the Funds pending Chase's investigation, the DAAs did not allocate risk of harm related to Chase delaying return of the Funds for a reason not permitted by the DAAs. (*See* Kespradit Decl. Ex. C ("2023 DAA") at 21, ECF No. 32-2 ("We will have no liability for any action taken under this section and/or related sections, and we may take such action without advance notice.")); *Rattagan*, 17 Cal. 5th at 44 (considering "the nature of the alleged conduct, the provisions of the contract itself, and whether the conduct exposed a party to a risk of harm neither

reasonably contemplated nor allocated by the parties before entering their agreement").

Having examined the DAAs, found Chase owes an independent tort duty to refrain from the alleged conduct, and determined that, based on the current record, Markowitz has raised a genuine dispute of fact that he can establish the elements of conversion independently of the rights and duties assumed by the parties, the Court holds that the economic loss rule does not bar Markowitz's conversion claim. *See Rattagan*, 17 Cal. 5th at 26.

### 2. *Chase's Wrongful Conduct*

Next, Chase argues that Markowitz's conversion claim fails because Markowitz cannot establish that Chase's conduct was wrongful. (Mot. 18–19.) In short, Chase asserts that because the DAAs expressly authorized Chase to restrict the Account, its conduct was not wrongful. (*Id.*) Despite Markowitz's best efforts, (*see* SGDF ¶ 28), there is no genuine dispute that the DAAs permitted Chase to freeze his Account "pending investigation" if, among other things, Chase "suspect[ed] that any transaction may involve illegal activity or may be fraudulent" or "reasonably believe[d] that doing so is necessary to avoid a loss or reduce risk to" it, (SUF ¶ 14). Therefore, for this claim to survive summary judgment, Markowitz must raise a genuine dispute of material fact that the Account was not "pending investigation" for those permitted reasons.

It cannot be genuinely disputed that Chase was investigating the Account from the date of its initial freeze on the Account—May 11, 2023—through receiving confirmation from SureTec that the Checks were not fraudulent—December 8, 2023. As part of its closure process, Chase restricts and reviews a customer's account to verify that the funds can be released. (*Id.* ¶ 28.) Chase's right to freeze an account "to avoid a loss or reduce risk," (*id.* ¶ 14), covers this initial freeze.

On May 18, 2023, a Chase fraud department employee became concerned that the payee name on the Checks may have been altered. (*Id.* ¶¶ 29–30.) The DAAs

permit Chase's continued freeze of the Account until it completed its investigation due to suspected fraud and to avoid a loss or reduce risk to it. Markowitz objects that this is a "feigned reason," (SGDF ¶¶ 29–30), but cites no evidence in support, and thus fails to raise a genuine dispute of fact that this was Chase's reason for continuing to freeze the Account. He points to Chase's apparent lack of concern about the authenticity of the Checks between May 11, 2023, and May 17, 2023. (*Id.* ¶ 30.) Even if true, this does not undermine that Chase became concerned after this brief period—on May 18, 2023—after reviewing the Account in connection with its closure proceedings.

Next, Markowitz asserts that Chase made no effort to verify the Checks with SureTec between May 18, 2023, and May 23, 2023. (*Id.*) But this is consistent with Chase's contention—as one of Chase's records states, a Chase employee was "[un]able to call" SureTec "as no active phone # located." (Kesterson Decl. Ex. A at 2; *see* Def.'s Resp. SGDF ¶ 7.)

Finally, Markowitz asserts that after Chase called SureTec outside of business hours on May 23, 2023, Chase made no effort to verify the Checks until December 4, 2023, when Chase contacted counsel representing SureTec in an unrelated case. (SGDF ¶ 30.) This, too, is refuted by the record. Between July 24, 2023, and November 7, 2023, Chase asked Markowitz for information that may assist with the investigation. (SUF ¶ 38.) Despite having access to an email from April 25, 2023, which could have supported the authenticity of the Checks, Markowitz did not provide Chase with the requested information until later in discovery, after Chase had already returned the Funds.[6] (*Id.* ¶¶ 39, 45–46.) Therefore, even if Chase had access to a

---

[6] After Chase released the Funds, Markowitz produced to Chase an email dated April 25, 2023, from his counsel to Oscar Gallegos of Bond Services of Ca, LLC in which he attached an "Unconditional Release of Claim on Bond" on a bond issued by SureTec in the principal amount of $641,020.50. (SUF ¶ 45.) Markowitz produced another email in which Gallegos stated that interest would be paid on the bond. (*Id.* ¶ 46.) Markowitz argues it is irrelevant that he did not provide these emails sooner because Chase insisted all information be exchanged in formal discovery. (SGDF ¶¶ 45–46; *see also id.* ¶¶ 38–39.) The record does not support Markowitz's contention: Chase provides evidence of

working number for Suretec between May 23, 2023, and December 4, 2023, a fact Markowitz has not supported with evidence, (*see* SGDF), there can be no genuine dispute of material fact that Chase's refusal to return the Funds to Markowitz was not wrongful through at least December 8, 2023.

However, while SureTec confirmed the authenticity of the Checks on December 8, 2023, (SUF ¶ 43), Chase did not return the Funds to Markowitz until at least February 27, 2024, (*id.* ¶ 44; SGDF ¶ 30). Chase provides no explanation for the delay and does not assert that its authentication of the Checks was still "pending investigation" after that date. (*See* Mot; Reply; SUF.) Thus, Chase fails to show that no genuine dispute of fact exists as to whether its failure to return the Funds after SureTec confirmed the authenticity of the Checks on December 8, 2023, was wrongful.

Even had Chase asserted the investigation was pending after December 8, 2023, Markowitz raises a genuine dispute as to this fact. In a declaration, Markowitz's counsel states that, on January 11, 2024, Chase's counsel informed him that "Chase had resolved its concerns about the [C]hecks and was prepared to release the funds" and later "conditioned the release of the funds on Mr. Markowitz'[s] agreement to dismiss the lawsuit." (Smith Decl. ¶ 13; *see* SGDF ¶ 30.) If Chase had completed its investigation, but delayed returning the Funds on the condition that Markowitz would dismiss this suit, that fact would raise a genuine dispute that, as of December 9, 2023, at the earliest, through the date Chase returned the Funds, Chase's refusal to return the Funds was wrongful.

Accordingly, the Court **GRANTS** Chase's Motion on Markowitz's conversion claim to the extent that Markowitz alleges Chase converted the Funds through December 8, 2023. Further, the Court **DENIES** Chase's efforts to obtain summary

---

specific requests to assist with verification it made to Markowitz in July and August 2023 outside of formal discovery. (*See* Kespradit Decl. Exs. 11–12.)

judgment on Markowitz's conversion claim for Chase's refusal to release the Funds from December 9, 2023, through the eventual release of the Funds.

### 3. Damages

Chase also moves for summary judgment on the conversion claim on the basis that the DAAs and California law preclude Markowitz from recovering the consequential and punitive damages he seeks. (Mot. 19–21.)

First, Chase notes that the DAAs provide, "We will not be liable for indirect, special or consequential damages regardless of the form of action and even if we have been advised of the possibility of such damages." (SUF ¶ 16 (emphasis omitted); Mot. 19.) However, Markowitz correctly points out, (Opp'n 20–21), and Chase does not contest, (*see* Reply), that to the extent this section limits liability for tort claims, this provision violates California law, *see* Cal. Civ. Code § 1688 ("All contracts which have for their object, directly or indirectly, to exempt any one from . . . willful injury to the person or property of another . . . are against the policy of the law."); *Appel v. Bos. Nat'l Title Agency, LLC*, No. 3:18-CV-0873-RSH-AHG, 2022 WL 3582776, at *8 (S.D. Cal. Aug. 19, 2022) ("On balance, the weight of California authority favors treating Plaintiffs' conversion claim as within the scope of section 1668, whether based on treating the claim as an intentional tort, as a strict liability tort for which intentional wrongdoing is alleged, or as a strict liability tort for which the 'public interest' is implicated.").

Second, Chase challenges Markowitz's attempts to obtain punitive damages on the conversion claim. (Mot. 20–21.) A plaintiff may recover punitive damages on a non-contract claim where the defendant has been guilty of malice, fraud, or oppression. Cal. Civ. Code. § 3294(a). To prove punitive damages against a corporate employer, California law requires a plaintiff show the conduct giving rise to punitive damages "must be on the part of an officer, director, or managing agent of the corporation." Cal. Civ. Code § 3294(b).

Markowitz asserts that Kevin Kesterson, a Vice President of Business Analysis Manager at Chase, ratified Chase's wrongful conduct, giving rise to punitive damages. (Opp'n 17; *see* Kesterson Decl. ¶ 1 (establishing Kesterson's role at Chase).) However, none of the conduct Markowitz identifies concerns Chase's post-December 8, 2023 decision to continue withholding the Funds after SureTec confirmed the authenticity of the Checks. (*See* Opp'n 16–18.) And Kesterson's declaration—on which Markowitz relies to support his ratification theory—bears no mention of the post-December 8, 2023 decision. (*See generally* Kesterson Decl.) Markowitz thus fails to meet his burden to establish a genuine dispute that Chase acted with malice, oppression, or reckless disregard towards his rights, or that an officer, director, or managing agent committed or ratified the conduct. *See, e.g.*, *Nguyen v. Wal-Mart Assocs., Inc.*, No. 23-CV-03204-JSW, 2024 WL 4557676, at *5 (N.D. Cal. Oct. 23, 2024) (granting summary judgment to defeat punitive damages where plaintiff failed to respond to corporation's denying punitive damages "with any showing of proof"); *Aaron Sowemimo v. DHL Express USA Inc. et al.*, No. 2:22-cv-04253-AB (MRWx), 2024 WL 4328828, at *8 (C.D. Cal. Aug. 16, 2024) (noting "higher evidentiary standard" for punitive damages and dismissing punitive damages claim where plaintiff "has not put forth sufficient evidence" to support the remedy).

Accordingly, the Court **DENIES** Chase's Motion as to consequential damages and **GRANTS** it with respect to punitive damages.

In summary, the Court finds no genuine dispute of material fact exists as to the following: Chase's refusal to release the Funds through the date it authenticated the Checks—December 8, 2023—was not wrongful, and Markowitz has not met his burden to show he is entitled to punitive damages. Conversely, a genuine dispute of material fact exists as to whether Chase's delay in returning the Funds from December 9, 2023, through the date it returned the Funds to Markowitz was wrongful. The Court also finds a genuine dispute exists as to whether Markowitz is entitled to recover consequential damages for that delay.

### B. Claim and Delivery

Chase moves for summary judgment on Markowitz's cause of action for claim and delivery. (Mot. 21–23.) Through this cause of action, Markowitz seeks recovery of the Funds and "all of his personal and business banking records from all of his accounts closed by" Chase. (Compl. ¶¶ 36–37.)

Chase's counsel declares that Markowitz's counsel agreed to dismiss this cause of action during a meet and confer prior to Chase filing the Motion, but acknowledges that the Markowitz has not yet dismissed the cause of action. (Kespradit Decl. ¶ 2; *see* Mot. 21 n.3.) And Markowitz does not address this cause of action in his Opposition. (*See generally* Opp'n.) In any event, the Court must grant summary judgment in favor of Chase on this cause of action.

"[A]n action for claim and delivery is not an independent cause of action." *Balboa Cap. Corp. v. Wall St. Physician, PLLC.*, No. 8:22-cv-00009-JVS (DFMx), 2023 WL 5503083, at *4 (C.D. Cal. Mar. 2, 2023) (internal quotation marks omitted). Instead, it "is a provisional prejudgment remedy by which a party may recover possession of specific property." *Coste v. Fox Beverages USA Inc*, No. 2:23-cv-02053-WLH (RAOx), 2023 WL 8522987, at *9 (C.D. Cal. Oct. 10, 2023) (quoting *Teed v. Chen*, No. 22-CV-02862-CRB, 2022 WL 16839496, at *10 (N.D. Cal. Nov. 9, 2022)). "It provides a plaintiff 'the right of immediate possession of the property involved in the action for specific recovery of the property without waiting for trial and judgment.'" *Id.* (quoting *Am. Mach. & Foundry Co. v. Pitchess*, 262 Cal. App. 2d 490, 493 (1968)).

As there is no independent claim and delivery cause of action, the Court dismisses this claim. *See, e.g.*, *Teed*, 2022 WL 16839496, at *10 (dismissing claim and delivery cause of action for this reason). Additionally, Chase has returned the property Markowitz seeks. Specifically, on February 27, 2024, Markowitz received a check from Chase in the amount of the Funds. (SUF ¶ 44.) And, in response to

1 Markowitz's request, Chase produced all available copies of deposit account
2 statements through discovery. (*Id.* ¶¶ 47–48.)

3    Accordingly, the Court **GRANTS** Chase's Motion regarding the claim and
4 deliver cause of action.

### C. Intentional Infliction of Emotional Distress

6    Chase also moves for summary judgment on Markowitz's IIED claim.
7 (Mot. 23–25.) Under California law, to prove IIED, a plaintiff must show (1) extreme
8 and outrageous conduct by the defendant with the intention of causing, or reckless
9 disregard of the probability of causing, emotional distress, (2) severe or extreme
10 emotional distress, and (3) actual and proximate causation of the emotional distress.
11 *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (citing *Hughes
12 v. Pair*, 46 Cal. 4th 1035, 1050 (2009)).

13    Chase argues that Markowitz cannot show its conduct was extreme or
14 outrageous. (Mot. 24–25.) Even assuming *arguendo* Markowitz has met his burden
15 of showing a genuine dispute of material fact that Chase's conduct was extreme and
16 outrageous, he has not pointed to facts sufficient to raise a genuine dispute that Chase
17 had the intention of causing, or reckless disregard of the probability of causing,
18 emotional distress. (*See id.* at 23.)

19    Markowitz devotes one sentence in his Opposition to this element: "Chase's
20 [extreme and outrageous] conduct can only be explained by concluding its intention of
21 causing, or reckless disregard of the probability of causing, emotional distress."
22 (Opp'n 19.)  He cites no evidence to support this conclusory and unsupported
23 assertion. (*See id.*; *see generally* SGDF); C.D. Cal. L.R. 56-4 ("The Court is not
24 obligated to look any further in the record for supporting evidence other than what is
25 actually and specifically referenced in the Statement of Uncontroverted Facts, the
26 Statement of Genuine Disputes, and the Response to Statement of Genuine
27 Disputes."). This failure alone supports a ruling for Chase on Markowitz's IIED
28 claim. *See, e.g.*, *Augustus v. City of Los Angeles*, No. 2:22-cv-02640-SB (AGRx),

2023 WL 4291437, at *14 (C.D. Cal. May 31, 2023) (granting motion for summary judgment on IIED claim where the plaintiff "point[ed] to no evidence suggesting that any Defendant intended to cause him emotional harm or acted outrageously with reckless disregard to such harm").

Moreover, Markowitz's description of Chase's alleged extreme and outrageous conduct undermines the inference that Chase restricted the Funds with the intent of causing, or reckless disregard of the probability of causing, emotional distress. For example, Markowitz asserts that Chase "had absolute proof that the checks were valid and not fraudulent" by December 8, 2023, when SureTec confirmed that the checks were authentic. (Opp'n 9–10; *see* SUF ¶ 41.) He alleges that "[d]espite having absolute proof of the authenticity of the [C]hecks, Chase still refused to release the funds" until February 27, 2024, because it "sought to condition the release of the funds on" his "agreement to dismiss the lawsuit." (Opp'n 10.) Even if true, this supports that Chase intended to keep Markowitz's money to induce him to drop the lawsuit, not with the intent of causing him emotional distress. This similarly undermines Markowitz's claim Chase acted with reckless disregard of the probability of causing emotional distress. Accordingly, the Court **GRANTS** Chase's Motion on Markowitz's claim for IIED.

### D. Negligent Infliction of Emotional Distress

Chase moves for summary judgment on Markowitz's NIED claim on the bases that it did not owe Markowitz a duty independent of the DAAs, the economic loss rule bars the claim, and the DAAs authorized Chase's conduct. (Mot. 25–28.) "Negligent infliction of emotional distress is not an independent tort, but the tort of negligence, to which traditional elements of duty, breach of duty, causation, and damages apply." *Downey v. City of Riverside*, 16 Cal. 5th 539, 547 (2024) (internal quotation marks omitted).

For the reasons discussed above regarding the conversion claim, the Court rejects these arguments, and finds Chase owed Markowitz an independent duty to not

convert the Funds and the economic loss doctrine does not bar his claim. (*See* Compl. ¶ 49b (alleging Chase "[w]rongfully with[eld] his deposited funds").) However, this independent duty does not extend to the other conduct Markowitz alleges was wrongful. (*See id.* ¶¶ 49a, 49c–d (alleging NIED claim for Chase's "[c]losing all of Markowitz's deposit and credit card accounts," "[d]isrupting and putting in jeopardy his personal affairs and conduct of his business," and "[p]utting his credit rating in jeopardy").)

As with the conversion claim, Markowitz has raised a triable issue of fact that Chase's conduct after authenticating the Checks on December 8, 2023, gives rise to a tort. None of the challenges to Markowitz's NIED claim that Chase raises supports a ruling that this claim entirely fails at this stage. Accordingly, the Court **GRANTS** Chase's Motion to the extent Markowitz's NIED claim seeks recovery on account of Chase's pre-authentication conduct and **DENIES** Chase's Motion regarding its post-authentication conduct.

## VI. CONCLUSION

For the reasons discussed above, the Court **GRANTS** partial summary judgment in favor of Chase. In particular, the Court **GRANTS** Chase's Motion for Summary Judgment on Markowitz's causes of action for claim and delivery and IIED. The Court also **GRANTS** Chase's Motion as to Markowitz's claim for punitive damages. Further, the Court **GRANTS** Chase's Motion as to the conversion and NIED causes of action for Chase's conduct prior to SureTec confirming the authenticity of the Checks on December 8, 2023. Finally, the Court **DENIES** Chase's Motion as to the conversion and NIED causes of action for Chase's conduct after this date (i.e., December 9, 2023) through the date Chase returned the Funds to Markowitz. (ECF No. 32.)

**IT IS SO ORDERED.**

December 23, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**